WILLIAM G. COCKE v. WESTERN UNION TELEGRAPH COMPANY.

1. TELEGRAPH COMPANY.   *Disclosure of message.   Punitive damages.*

  The thoughtless disclosure by a telegraph operator of the con-
    tents of a message addressed to the plaintiff, relating to a
    public matter which otherwise would have become generally
    known in a very short time, does not justify the imposition of
    punitive damages on the telegraph company.

2. SAME.   *Statutory penalty.   Code 1892, § 1301.*

  Code 1892, § 1301, imposing a penalty on employes of telegraph
    companies for divulging the contents of a message, has no ap-
    plication to an action against the company for damages result-
    ing from the publication of a message.

FROM the circuit court of Tate county.

HON. J. B. BOOTHE, Judge.

Cocke, the appellant, was plaintiff, and the telegraph com-
pany, appellee, defendant in the court below.   From a judg-
ment in plaintiff's favor against defendant for nominal dam-
ages, one dollar, the plaintiff appealed to the supreme court.

The opinion states the facts.

*J. F. Dean,* for appellant.

Plaintiff's duty was to pay for the transmission of the telegram, which he did. Plaintiff's rights were to have the message received, transmitted, and delivered by the telegraph company, and to have the contents of the message kept secret. Defendant's right was to receive just compensation for the message, and its duties were to receive, transmit, and deliver, and to keep inviolate the secrecy of the telegram. It is as much the duty of the telegraph company to keep the contents of the message from every one but the sendee as it is to transmit or deliver the telegram to him. It has been decided by so many courts so many times that actual damages may be recovered for mental suffering where no pecuniary loss is shown, that I deem it useless to discuss that proposition.

It has been decided in this state in *Telegraph Co.* v. *Watson,* 82 Miss., 101; s. c., 33 South. Rep., 76; see also *Young* v. *W. U. Tel. Co.,* 3 Am. R. R. & Corp. Cases, 493; *Chapman* v. *W. U. Tel. Co.,* 3 Am. R. R. & Corp. Cases, 193; in each of which cases and notes to them this subject is exhaustively treated. I refer also to an Iowa case in 57 Am. St. Rep., 294, in which the same doctrine is discussed and in which the evidence necessary to sustain a verdict is also discussed.

That the telegram was made public is absolutely undisputed. That it was made public in Greenville is shown beyond question. It was not made public by Mr. Cocke or his mother or sister. It was then *ex rei necessitate* made public by the telegraph company. If made public by the telegraph company, it was through the negligence, willful or otherwise, of its agents. If the contents of the message were made public, the telegraph company negligently and willfully violated its contract, and is liable for all damages resulting proximately therefrom. The disclosure was the proximate cause of the mental suffering and the defendant company is liable. *Rogers* v. *Telegraph Co.,* 68 Miss., 748.

. If injury to the feelings be an element of damage in slander, libel, and breach of promise cases, it seems to us it should equally be so considered in cases of this character. If not, then most grievous wrong may often be inflicted with impunity, legal insult added to outrage by the parties, by offering one cent or the cost of the telegram as compensation to the injured party.

If any wrong was committed in the case, it was not from mere negligence, but was a willful wrong; and damages for mental suffering are allowed in Mississippi where the wrong is willful. *Telegraph Co.* v. *Rogers,* 68 Miss., 748, which is followed and amplified by *Telegraph Co.* v. *Watson,* 82 Miss., 101; s. c., 33 South. Rep., 76.

In *Storm* v. *Green,* 51 Miss., 109, the court says: "The rule on the subject of exemplary damages has been several times repeated in this court, and has assumed a definite form. Where willfulness, fraud, malice, or oppression evincing a disregard of the rights of others, characterized the wrongful act complained of, then the jury are not limited to the mere value of the property and the interest, but may rightfully consider the circumstances of aggravation and increase the damages, so as to enforce a respect for the rights of others and as a punishment to the willful trespasser." Referring to *Whitfield* v. *Whitfield,* 40 Miss., 352; *Briscoe* v. *McElween,* 43 Miss., 569, and *Jamison* v. *Moon,* 43 Miss., 602. In the latter case it was said to be proper to consider whether the trespass was "committed with a high hand, wantonly, needlessly, oppressively." The jury may also take into account the "mortified sensibilities and reputation of the party and the evil example to the public."

The same doctrine here announced is stated in *Railroad* v. *Scurr,* 59 Miss., 461.

*Harris & Powell,* for appellee.

We must not be understood as contending that a telegraph company may not be liable in damages for the wrongful dis-

closure of the contents of a message, though it is true that
the decisions on this point are exceedingly meager. Our statute,
Code 1892, § 1301, provides a punishment for any clerk, oper-
ator, messenger, or other employee who willfully divulges the
contents of a message to any one except the person for whom
it is intended. No penalty is imposed, however, on the com-
pany.

This, however, is not an action under that statute, but is a
claim for damages, punitive damages, from the company itself
for an alleged willful and malicious, wanton and reckless dis-
closure of the message in question, and our contention is that
under the peculiar facts disclosed in this case the plaintiff is
only entitled to nominal damages, if to any at all. There is no
pretense that the plaintiff sustained any actual damage.

In the very nature of things, Cocke could not have been
damaged by the disclosure of the contents of this message.
While in fact it was a message between individuals, it was not
in fact a private message, nor a message in regard to his private
business. It was the announcement of the result of a public
judicial act by the justices of the highest tribunal in the land,
a matter essentially public, in no way secret; a matter in which,
as alleged in the declaration, the public at large were very
much interested; indeed, a matter that the public at large
were entitled to know as much about as Cocke. It was in re-
gard to a public matter in which the state of Mississippi was
interested; a matter to which the state was a party; a matter
affecting the administration of public justices in this state; a
matter which might be said to be so essentially public in its
nature as to be presumably known as soon as the justices to
whom Mr. Dean had made his application had acted upon it.
It was a matter which was bound to be made public. It was
a matter which any press reporter could have telegraphed to
the end of the world had he seen fit to do so, and a matter which
Cocke had no right to keep secret, and which was not, as we
say, in the nature of a private message.

The question is, Is the appellant entitled from the facts disclosed in this record to punitive damages? There can be but one answer to this question. The circumstances attending the alleged disclosure of the purport of this message are fully set forth in the record, and there is not the slightest pretense of malice or willful wrong.

While it is true there was a disclosure knowingly made and intentionally made of the message, yet it was not a willful disclosure as that term is technically used and understood in the law, when used as a basis for inflicting punishment.

To hold that the telegraph company is liable for punitive damages in this case would be tantamount in holding that it is liable in punitive damages for a mere disclosure, however innocently made, and however harmless in its results, and regardless of the character of the message. No principle of law can be found to support such a proposition.

This court has distinctly and clearly defined the meaning of willful wrong. In the case of *Vicksburg Company* v. *Marlett,* 78 Miss., 874, this court says:

"For a willful wrong that gives a cause of action for the imposition of exemplary damages must be denoted by wrongful act, done with the knowledge of its wrongfulness. By reason of the negligence of the conductor, who gave the unpunched transfer to Marlette, he was wrong in being ejected from the car, but the wrong cannot be characterized as a willful or intentional wrong."

In numerous cases this court has held that exemplary damages are not recoverable, unless the act complained of is characterized by malice, recklessness, rudeness, oppression, or willful wrong. *Forsee* v. *Railroad Co.,* 63 Miss., 66; *Railroad Co.* v. *Scurr,* 59 Miss., 456; *Railroad Co.* v. *Green,* 52 Miss., 779; *Railroad Co.* v. *Pearson,* 80 Miss., 26; *Railroad Co.* v. *Moore,* 79 Miss., 766.

CALHOON, J., delivered the opinion of the court.

Mr. Cocke's declaration asks punitive damages because the telegraph company, through its operators and agents, disclosed the contents of his dispatch. The court below held the jury to nominal damages, and they accordingly returned a verdict for $1, which was his actual outlay. The claim for vindictive damages is based solely on mental distress, grief, mortification, and humiliation because of the publicity given his message. He appeals to this court.

This case must be decided, of course, without reference to and independently of § 1301, Code 1902, which denounces a penalty against any person, being the employee of any telegraph company, who divulges the contents of a message. It must, of course, be determined by the law applicable to the violation of all contracts, which may or may not entitle to smart money, as the facts may warrant. Involved in every contract for the transmission of a telegraphic dispatch is an obligation on the part of the transmitting company to keep its contents secret from the world. This obligation was not observed in the case before us, and the message was divulged by one or two of the employees of appellee. This gave a right of action beyond question to recover actual damages. Whether it warrants exemplary damages or not must be determined by the facts of the record in the light of the settled principle that compensation is the rule and punishment the exception, justified only by circumstances of outrage, malice, oppression, or willful wrong, or, in cases suited to its application, such wanton, reckless, or grossly careless conduct as is equivalent to a bad intent to do hurt to body or feelings. It is certain in this case—incontrovertible—that there was no evil intent, no malice, no thought of harm, or that anybody's feelings would be hurt. On the contrary, it is plain that the operator thoughtlessly divulged the contents of the message to a warm friend of appellant, as he himself was, from the kindest motives. In fact, as we think, we are practically called on to decide whether or

not the mere revealment of the contents of a dispatch justifies punitive damages. The facts, taken most strongly for appellant, are these: Appellant's brother had been convicted of murder and sentenced to death, and this court had affirmed his case on appeal. It was a case of great notoriety in the state because of the high standing and great social influence of his family and its extensive connections. Tremendous efforts were made for a commutation of his sentence to imprisonment for life, but they were of no avail with the governor of Mississippi. The chief justice of this court, with the approval of his associates, refused a writ of error to the Supreme Court of the United States. The day of execution was near at hand. One of his attorneys went to Narragansett Pier, where was one— perhaps two—of the judges of the United States Supreme Court, to ask for a writ of error to that court. This journey of counsel, and the purpose of it, were well known to the public, and appeared as news in the public prints. There was no secrecy or attempted secrecy about it. The governor had refused a respite to enlarge the time for that journey, there being time to make it without respite, but with not much margin. Before leaving it was arranged between the counsel and appellant that the former should wire the latter the result to Senatobia, Miss., and arrangement was also made, if appellant was not at Senatobia, that the message should be forwarded to him at Greenville, Miss., care Avenue Hotel. The journey was unsuccessful. The writ of error was refused. The counsel at once sent to appellant, at Senatobia, a dispatch in these words: "Two judges here. One refused writ. Think other will also." This was dated July 19th. The execution was fixed for July 22d. Appellant had many friends in Senatobia, who sympathized with him in his distress, and very much desired his brother's pardon. Among these was the operator at appellee's office there, and he, in violation of law and of the obligation involved in the contract of transmission, disclosed the contents of the message to another, or others, of the friends of appellant, who was not

there, but had gone to Greenville. The information, of course, the case and the object of the journey being notorious, soon became generally known. The message was forwarded to Greenville, and reached there on July 20th, and while the messenger boy was taking it to Avenue Hotel, he met a young gentleman, who was a son of one of the counsel for the condemned man, and opened the envelope and read to him the message. There is no claim that the disclosure caused any actual damage, or had the slightest effect on the course of events. The sole claim for smart money is set out in the following language of the declaration: "By reason of willful, wanton, gross, reckless, and malicious wrong of defendants, plaintiff was greatly grieved, mortified, and humiliated, and made to suffer great mental distress, to his hurt and damage in the sum of fifty thousand dollars; and therefore he sues." The defendants are the telegraph company and its Senatobia operator. The effect of the disclosure on the mind and feelings of appellant appears in his own testimony as follows: "Q. What effect, if any, did the fact that the telegram was made public before it reached you have on your mind? A. I don't like very much for my private business to be made public property, and everybody knew of the contents of my telegram. It was very humiliating to me. Q. What effect did it have on your feelings generally? A. It had that effect—very humiliating; and I don't like for people to know my affairs. It was my private business, and it wasn't to be made public to anybody. Q. What effect did it have on your mind and feelings when you found it was known in Jackson, Miss.? A. I was hurt very much about its being known." We decline to hold that exemplary damages are recoverable under the facts of this case. If he suffered mental distress, grief, mortification, or humiliation, he should not have suffered it, if a normal man, and courts should only decide upon the assumption of normal conditions. This was a message relating to a public matter, necessarily to be general property in a few hours, and any one must be

unnaturally thin-skinned to be wounded by its premature revealment to the extent of being entitled to punitory damages. This is true, though many cases might arise warranting the assessment of such damages.

*Affirmed.*