## TEXAS & N. O. R. CO. et al. v. BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, etc., et al.[*]

Circuit Court of Appeals, Fifth Circuit.
June 10, 1929.

No. 5406.

For opinions below, see 24 F.(2d) 426; 25 F.(2d) 873, 876.

J. H. Tallichet, C. R. Wharton, and C. L. Carter, all of Houston, Tex., and W. B. Spencer and Victor Leovy, both of New Orleans, La. (C. L. Carter, Calvin B. Garwood, and John P. Bullington, all of Houston, Tex., on the brief), for appellants.

Carl G. Stearns and John H. Crooker, both of Houston, Tex., and Donald R. Richberg, of Chicago, Ill. (Fulbright, Crooker & Freeman, and T. H. Cody, all of Houston, Tex., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. The original bill in equity in this case was filed on July 25, 1927, by the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, Southern Pacific Lines in Texas and Louisiana (herein referred to as the brotherhood), a voluntary association consisting solely of railway clerks in the employ in the states of Texas and Louisiana of the Texas & New Orleans Railroad Company (herein called the railroad company), and H. W. Harper, in behalf of themselves and others of the class composed of railway clerks in the employ of the railroad company in the states of Texas and Louisiana, against the railroad company and named officers and agents of it. By an amendment of the bill, the railroad company became the sole party defendant. The bill contained allegations to the following effect: Since its organization in September, 1918, the brotherhood has been authorized by a majority of the railway clerks in the employ of the railroad company to represent them in all matters relating to their employment, and that representation was recognized by the railroad company in dealings between it and such railway clerks before and after the beginning of a controversy as to wages between the railroad company and such clerks, following the application of such clerks, made in November, 1925, by the brotherhood as their representative, for an increase of wages, and after the denial of that application by the railroad company and the reference of that controversy by the brotherhood to the United States Board of Mediation. While that controversy was pending before that board,

the railroad company undertook, instigated, and encouraged the formation of a so-called "Company Union" of railway clerks in the employ of the railroad company, to be known as "the Association of Clerical Employees—Southern Pacific Lines" (herein called the association), and, through the railroad company's named general officers and agents having and exercising supervisory and directory powers over members of the brotherhood, endeavored in ways stated to influence, intimidate, and coerce members of the brotherhood to withdraw from it, and to make the association their representative in dealings with the railroad company in all matters relating to their employment, and by such means to prevent the railway clerks in the employ of the railroad company in Louisiana and Texas from freely, and without interference, influence, or coercion, designating, by collective action, their representative in dealings with the railroad company in reference to their employment. Pursuant to the prayer of the bill, and after a hearing following the issuance and service of a notice to show cause, the court, on August 3, 1927, issued a temporary injunction, which ordered:

"That the defendant Texas and New Orleans Railroad Company (a corporation and common carrier owning, leasing, and operating certain railroads throughout the States of Texas and Louisiana), its officers, servants, and agents are hereby enjoined and restrained from in any way or manner interfering with, influencing, intimidating, or coercing plaintiffs or any of the approximately seventeen hundred clerical employees (and being the clerical employees described and referred to in plaintiffs' petition, which includes approximately seventeen hundred railroad clerks in the employ of the defendant Railroad Company on its lines throughout the States of Texas and Louisiana, except such clerical employees as are employed and engaged in its general office in the City of Houston, Texas, and in its general office in the City of New Orleans, Louisiana), with respect to their free and untrammeled right of selecting or designating their representatives for the purpose of considering and deciding any and all disputes between said clerical employees and the defendant Railroad Company; and further enjoining and restraining said defendant Railroad Company, its officers, servants, and agents from in any way or manner interfering with, influencing, intimidating, or coercing plaintiffs or any of said clerical employees herein referred to of their free and untrammeled right of self-organization.

"Nothing in this injunction shall be considered or construed as authority to prevent any employee of said defendant Railroad Company, in the class referred to, from organizing, joining, promoting, or fostering as many unions as he or they (meaning such employees in the class referred to) may desire, and in any way which he or they may desire, and with the assistance and aid of any of his fellow employees in any way and to any extent that said fellow employees (in the class referred to) may desire; nor shall anything in this injunction be considered or construed as authority or permission for any officer or agent of said company, or any employee, acting for or on behalf of the defendant Railroad Company, attempting to influence or to interfere with said selection or designation of their said representatives, or their right to self-organization as herein referred to, upon any pretext that they are acting individually and not as representatives of said defendant corporation."

In October, 1927, contempt proceedings were instituted by an information which charged sundry violations of the injunction by the railroad company acting through its authorized officials and agents. Evidence in support of the allegations of the information included evidence to the effect that, after the injunction was issued, the railroad company, acting through agents authorized by it, brought to bear upon clerks in its employ who were members of the brotherhood, or eligible to membership therein, influence and pressure, including promises and threats, to induce such employees to renounce the brotherhood as the representative of such clerks in dealings with their employer as to rates of pay, rules, and working conditions, and to consent to the association being the representative of such clerks in such dealings; permitted employees to devote their time and services to activities for the association without deduction from their pay while they were so engaged, but docked the pay of employees who were members of the brotherhood for time used in the service of the brotherhood, deprived of passes employees who, while on leave of absence without pay, acted as officers of the brotherhood, and dismissed from the service employees who acted for the brotherhood, because they so acted; and formally recognized and dealt with the association as the sole authorized representative of such clerks in dealings with the railroad company as to wages and working conditions. By an order made in that proceeding, the court adjudged that the railroad company and named agents and employees of it were guilty of

contempt, and imposed as conditions of the purging of the contempt adjudged the cancellation of the recognition by the railroad company of the association as the authorized representative of such clerks, the restoration to their positions of named discharged employees who were members of the brotherhood, and the restoration of the pass privileges of which named members of the brotherhood had been deprived. After the introduction of evidence by both parties, the court rendered a decree perpetuating the above-mentioned temporary injunction.

■ The following provision of section 2 of the Railway Labor Act, approved May 20, 1926, 44 Stat. 577, being subdivision third of that section (45 USCA § 152), was invoked to support the asserted right to relief sought by the bill: "Representatives, for the purposes of this Act, shall be designated by the respective parties in such manner as may be provided in their corporate organization or unincorporated association, or by other means of collective action, without interference, influence, or coercion exercised by either party over the self-organization or designation of representatives by the other." For the appellants it was contended that to give to the quoted provision the effect of conferring on employees of a carrier a judicially enforceable right would be inconsistent with the decision in the case of Pennsylvania, etc., Federation v. Pennsylvania Railroad Co., 267 U. S. 203, 45 S. Ct. 307, 69 L. Ed. 574. In that case a trade union of employees of a carrier sought to enforce by mandatory injunction compliance with regulations of the United States Labor Board providing for such employees acting, in dealings with the carrier as to wages, conditions of employment, etc., through representatives of their own choice. The court recognized that under the statute governing the Labor Board it had the right to prescribe such regulations, but decided that, under that statute such regulations were not legally binding on the carrier or its employees, or judicially enforceable at the instance of the latter. That case and the instant one differ, in that a question presented in the former was as to regulations of the Labor Board being judicially enforceable, while the latter presents the question whether a provision of an act of Congress gives a right claimed, and, if so, whether a court can award redress for a violation of that right. By the quoted provision Congress conferred on employees of a carrier the right to select their representatives, for the purposes of the act, by means

of collective action, without interference, influence, or coercion exercised by the carrier over the self-organization or designation of representatives by the employees, and imposed on the carrier the duty of refraining from exercising the forbidden interference, influence, or coercion.

Though under the Railway Labor Act it is optional with carriers and their employees to agree or not to agree to use the means provided for by the act for the settlement of disputes, it is not optional with either to violate rights conferred on the other by the act. The provision in question indicates the unwillingness of Congress to provide machinery for the settlement of disputes between carriers and their employees by the voluntary action of the parties without at the same time providing for the representative acting for each party in agreeing to a prescribed method of settlement being one chosen by that party without interference, influence, or coercion exercised by the other party. The violation of a duty created by statute, resulting in damage to one of the class for whose benefit the duty was imposed, confers a right of action upon the injured person, though the statute makes no provision as to a remedy for such a wrong. Marbury v. Madison, 1 Cranch, 137, 163, 2 L. Ed. 60; De Lima v. Bidwell, 182 U. S. 1, 176, 21 S. Ct. 743, 45 L. Ed. 1041; 1 Corpus Juris, 951. The language of the provision in question is inconsistent with the existence of intention to leave a carrier free to interfere, in the way charged in the bill, with collective action by members of a group of its employees in selecting their representative for purposes of the act.

■ The provision in question was attacked on the ground that it was beyond the power of Congress to enact it. We think that under the power to regulate interstate commerce it is competent for Congress to make provision for the settlement of disputes between interstate carriers and their employees with reference to rates of wages, rules, and working conditions, to the end of preventing such disputes resulting in the interruption or stopping of the movement in interstate commerce of freight or passengers. Wilson v. New, 243 U. S. 364, 37 S. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024. Certainly a not inappropriate feature of such a provision would be one having a tendency to secure to each of the parties to such a dispute, when an attempt to effect a settlement of the dispute is to be made, the opportunity of selecting a representative not subject to the domination or under influence of the other

party, as a settlement could not reasonably be expected to be satisfactory to both the parties and the public where one of the parties to the dispute was not loyally or fairly represented in the transaction which resulted in the settlement. To say the least, we have not been convinced of the invalidity of the provision in question.

For the appellants it was contended that, though there was no adequate legal remedy for the redress of the wrongs charged by the bill, the issue of the injunction was forbidden by section 20 of the Clayton Act, 29 U. S. C. § 52 (29 USCA § 52), which provides that no restraining order or injunction shall be granted by any United States court or a judge thereof in any case between employers and employees, involving, or growing out of, a dispute concerning terms or conditions of employment, unless necessary to prevent irreparable injury to property, or to a property right, of the party making the application. It may be assumed that that provision governs applications for injunctive relief by both employers and employees, though there is some ground for concluding that in enacting the provision Congress had in mind applications for such relief by employers only.

The term "property right" is broad enough to include the right to make contracts for the acquisition of property, by the rendition of services, or otherwise, and the right of an employee to money or other property exchanged, or to be exchanged, for his services. Coppage v. Kansas, 236 U. S. 1, 14, 35 S. Ct. 240, 59 L. Ed. 441, L. R. A. 1915C, 960. It hardly would be denied that injury to a property right of one would result from keeping him from realizing as much income from his occupation or business, though it consists in rendering personal services for compensation, as he could have earned if his freedom of acting and contracting had not been interfered with. We are of opinion that, within the meaning of the provision now under consideration, injury to property rights of members of a group of employees would result from conduct of their employer having the effect of such employees, in dealings between them and their employer with reference to terms and conditions of employment, having a representative subject to the domination or selfish influence of the employer, as a probable consequence of employees being so represented would be their failure to fare as well financially as they would have fared if they had been represented by a loyal agency intent on promoting their interests. The evidence adduced included a

letter written by a vice president of the railroad company to its president about two months prior to the date of the filing of the bill, which showed that the planning to get rid of the brotherhood as the representative of the clerical employees in the pending dispute as to wages was because of the conviction or expectation that the railroad company, by eliminating the brotherhood from the situation, would be enabled to effect a settlement of that dispute at a cost not to exceed $75,000 a year, while any settlement that could be expected to be brought about as a result of dealings with the brotherhood would mean an increased clerical pay roll of approximately $340,000 a year. In the circumstances attending the institution of the suit, one of those circumstances being a realization by the carrier that a settlement of the pending dispute as to wages could not be effected without some increase in the wages of its clerks, there was a substantial basis for the conclusion that members of the group of employees whose wages were in question had a property or financial interest in being afforded the opportunity of choosing a representative to act for them by collective action, without interference, influence, or coercion exercised by the carrier. We conclude that the granting of an injunction in this case was not a violation of the statutory provision in question, and, further, that the allegations and proofs warranted the granting of injunctive relief.

The action of the court in the contempt proceedings in imposing conditions to the purging of the contempt found to have been committed did not go beyond requiring the undoing of what had been done in violation of the injunction. In dealing with the situation created by violations of the injunction, it was permissible for the court to provide for the restoration of the status quo. Texas & N. O. R. Co. v. Northside Ry. Co., 276 U. S. 475, 48 S. Ct. 361, 72 L. Ed. 661.

We conclude that the record does not show that reversible error was committed. The decree is affirmed.

FOSTER, Circuit Judge (dissenting). In the last analysis, the case here presented is an attempt by one labor union to prevent the organization of another labor union and to compel a railroad to negotiate with it as the sole representative of its clerical employees.

The organization of workers into unions and collective bargaining as to wages and working conditions has long been recognized by the courts as legal and by the public as desirable. The Railway Labor Act of 1926 is

merely declaratory of public policy. It provides means for negotiation and arbitration, but, unless arbitration is voluntarily entered into by mutual agreement, it contains no provision for compelling observance of its various sections.

However desirable it may be, in the interest of the public and the parties, that both a railroad and its employees proceed in good faith to settle their differences as to wages and working conditions in the manner pointed out by the act, either the railroad or its employees may refuse to be bound by the act and may decline to negotiate at all.

For a railroad to set up a company union, by persuasion or implied coercion, perhaps, and to then enter into an agreement with it, which may be considered merely an empty form, may be wrong and contrary to public opinion, but to say that paragraph 3 of section 2 of the Railway Labor Act gives a right of action to prevent such a course of conduct is going beyond the letter and intent of the law.

In my opinion, the case here presented comes clearly under the ruling in Pennsylvania, etc., Federation v. Pennsylvania Railroad Co., 267 U. S. 203, 45 S. Ct. 307, 69 L. Ed. 574. I therefore respectfully dissent.