NEWFIELD v. RYAN et al. (two cases).*

**BALLENTINE v. FLORIDA TEX OIL CO. et al.**

Nos. 8458–8460.

Circuit Court of Appeals, Fifth Circuit.
July 22, 1937.

*Writ of certiorari denied 58 S.Ct. 54, 82 L.Ed. ——.

Allen E. Throop, Gen. Counsel, Securities and Exchange Commission, Robert E. Kline, Jr., and William A. McClain, Assts. to Gen. Counsel, Securities and Exchange Commission, all of Washington, D. C., for appellants Newfield and Ballentine.

Wm. C. Pierce and W. K. Zewadski, both of Tampa, Fla., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

These three appeals, while brought up in separate records, present the same question and may be disposed of in one opinion. They are from interlocutory orders restraining appellants, agents of the Securities and Exchange Commission, from enforcing subpoenas duces tecum issued to the Postal and Western Union Telegraph Companies, under authority of the Securities Act of 1933, as amended, 15 U.S.C.A. § 77a et seq.

In the Ballentine case the subpœna required the bringing and production of "Any and all telegrams or copies thereof in your custody or control, sent or received between the dates of January 1, 1937, and March 12, 1937, by Florida Tex Oil Co. Lewis Sacker, Edmund A. Aldridge and Income Royalties, Inc. which mention or refer or relate to the Class A common stock of Florida Tex Oil Company or to interests in oil royalties, or oil leases in the Walker farm or tract of the Crescent pool, Oklahoma, the Fitts pool, Oklahoma, or the Jacob pool, Texas, or to any transactions or proposed transactions in any such securities, and particularly any and all telegrams or copies thereof, sent to or received from George C. Creager, Oklahoma City, or M. A. Childers, San Antonio, Texas."

In the Newfield cases the subpœnas required the bringing and production of "Any and all telegrams or copies thereof in your custody or control, sent or received between the dates of May 1, 1936, and March 30, 1937, by Ryan-Florida Corporation, Frank J. Ryan, Thomas J. McReynolds, Jr. and J. E. Stillman, which mention or refer to or relate to investment contracts or certificates of participation in profit sharing agreements, pertaining to oil royalties or interests in oil rights or leases, or to any transaction or proposed transaction in any of said securities, and pertaining particularly to oil royalties or interests in oil rights or leases in the Wilmauna Section of Hillsborough County, Florida."

Each of the bills claimed that the act itself under which the subpœnas were issued was violative of the Fourth and Fifth Amendments in that (a) it purported to compel persons to be witnesses against themselves; (b) it purported to authorize

general, and therefore unreasonable searches and seizures. Each of the bills attacked the subpœnas themselves, urging that if the act was valid the subpœnas in question were not supported by its authority, in that (a) they command the production of telegrams without distinction between interstate and intrastate messages; (b) they are not sufficiently specific to confine their demands within the scope of the act; (c) they compel the production of plaintiffs' messages by their agents, the telegraph companies, without affording plaintiffs an opportunity to contest the demand; (d) the subpœnas are too general, too wanting in specification, and constitute but exploratory fishing expeditions; (e) no hearing to which the documents are relevant is being held by the commission, and no proper investigation is going forward which would authorize the issuance of the subpœnas; (f)· they violate amended rule IV—6, of the rules and practices of the commission, "Subpœnas for the production of documentary evidence will issue upon application in writing, which must specify as nearly as may be, the documents desired and the facts to be proven by them."

All the bills aver that plaintiffs have no adequate remedy at law, for that unless restrained by the court the defendants telegraph companies will obey the subpœnas, and furnish the information desired. The commission defendants, Newfield and Ballentine, answered the bills, insisting that the Securities Act was valid, and that the subpœnas were issued in accordance with its provisions and by authority of the commission in a matter pending before it for investigation. They answered that the practice rule referred to in plaintiffs' bills applies not to investigations of the kind here being conducted, but only to hearings had before the commission. They also pleaded fully; that activities of defendants in connection with the interstate offering of securities, investments, contracts, and interests in oil rights are under survey and investigation by the commission; and that the commission has reason to believe that the provisions of section 5 (a) and section 17 (a) of the Securities Act (as amended, 15 U.S.C.A. §§ 77e (a), 77q (a) have been, are being, and are about to be violated by the defendants, who are in the course of obtaining money and property by means of false and fraudulent representations in connection with the issuance, offer, and sale in interstate commerce of fraudulent securities.

The District Judge thought it unnecessary to rule upon the constitutionality of the Securities Act of 1933 (as amended, 15 U.S.C.A. § 77a et seq.) or the Securities Exchange Act of 1934 (as amended, 15 U.S.C.A. § 78a et seq.). Of the opinion that plaintiffs had a property right in the privacy of their telegrams, though in the possession of the companies, and a standing to attack the form and content of the subpœnas; that the subpœnas described the documents in such indefinite terms as to constitute an unreasonable search and seizure under the Fourth Amendment; and that they sought to deprive plaintiffs of their property without due process, he granted the interlocutory injunctions prayed.

Appellants, denying that the subpœnas are in any respect exceptionable, are here insisting that they constitute a "demand of other lawful authority" which, under the Federal Communications Act of 1934, § 605, 47 U.S.C.A. § 605, at once requires and justifies disclosure of telegraph messages;[1] that therefore no right of privacy, if plaintiffs had any, in the telegrams was violated; and that the subpœnas, being directed not to plaintiffs but to the companies, plaintiffs had no standing to invoke either the Fourth or the Fifth Amendments, particularly no standing to complain of the form and content of the subpœnas.

We agree with appellants that the subpœnas in themselves are unexceptionable; that they are not unduly indefinite; and that they do not constitute unreasonable searches and seizures.

The subpœna in the Ballentine case was

---

[1] "No person receiving or assisting in receiving, or transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney, or to a person employed or authorized to forward such communication to its destination, or to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, or to the master of a ship under whom he is serving, or in response to a subpœna issued by a court of competent jurisdiction, or on demand of other lawful authority."

definitely limited to a period of less than three months; those in the Newfield cases to a period of less than one year. The subpœnas in all the cases were limited to the persons and corporations under investigation and to the schemes being investigated. In each of the subpœnas attention was called to the subjects under particular investigation. None of the subpœnas could in any sense be regarded as dragnets for fishing expeditions. All of them are well within the specific limits approved in the cases. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 28 S.Ct. 178, 52 L.Ed. 327, 12 Ann. Cas. 658; Wilson v. United States, 221 U. S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann. Cas.1912D, 558; Wheeler v. United States, 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309; Brown v. United States, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500; McMann v. Securities and Exchange Comm. (C.C.A.) 87 F. (2d) 377, 379.

▮▮, But we think it plain, that in enacting the securities legislation in question, Congress was well within its constitutional powers, and that the investigations and subpœnas under attack are fully supported by that legislation. We agree, therefore, with appellants in the broader view they take of this case, that the assailed subpœnas constitute a "demand of other lawful authority," justifying and requiring the telegraph companies to furnish and disclose the messages called for. We agree with them, therefore, that the subpœnas do not take plaintiffs' property, nor invade their right of privacy in the messages, inspection of which is demanded. We agree, too, that, directed not to them, but to the companies, plaintiffs have no standing to invoke the Fourth or the Fifth Amendments against, and particularly none to complain of, the form and content of the subpœnas.

▮▮ This is not to say, as appellants argue, that plaintiffs, as senders of telegraphic messages, have no standing in equity to prevent an unauthorized publishing and disclosure of their contents, that is, disclosures made by the companies, except

upon the demand of lawful authority. Upon the plainest principles we think they do. Statutes, both state, section 7984, Compiled Laws of Florida 1927, and the Federal Communications Act, supra, forbid such disclosures, and equity is always competent to preserve rights conferred to prevent the breach of duties affixed, by statutes. Texas & N. O. R. Co. v. Brotherhood. of Ry. and Steamship Clerks (C.C.A.) 33 F. (2d) 13, 16; De Lima v. Bidwell, 182 U.S. 1, 21 S.Ct. 743, 45 L.Ed. 1041. If, therefore, defendants were private persons, mere interlopers, seeking information for their own ends, and not persons having authority, plaintiffs should have their writs. Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877; Board of Trade v. Christie Grain & Stock Co., 198 U.S. 236, 25 S.Ct. 637, 49 L. Ed. 1031; Cocke v. Western Union Tel. Co., 84 Miss. 380, 36 So. 392; Jones on Telegraph and Telephone Companies, § 311, 62 C.J. 169; High on Injunctions, Vol. 1, § 19; Baker v. Libbie, 210 Mass. 599, 97 N. E. 109, 37 L.R.A.(N.S.) 944, Ann.Cas. 1912D, 551; Hearst v. Black, 66 App.D. C. 313, 87 F.(2d) 68.

The cases appellants cite against plaintiff's standing to be heard are not at all in point. Here is no case of eavesdropping by wire tapping, as Olmstead's Case [2] was; neither is this a case as Isbrandtsen's (Isbrandtsen-Moller Co. v. U. S.) [3] and Mc-Mann's (McMann v. Securities and Exchange Comm.) [4] were, of orders for books and papers belonging to others than plaintiffs. This is a case of messages, the privacy of which and the freedom from disclosure as to which, are secured to plaintiffs under federal statutes which condition their receiving and sending.

▮ Neither is it to say that officials and bodies authorized by state or federal law, to make investigations and inquiries, or otherwise exert public authority, may under official pretext but in fact officiously, extend their powers beyond those provided by the law, or that color of, may serve as, authority. The contrary is firmly established as the principle of democracy in America, the spirit of its laws.[5] Jones v. Securities & Exchange Commission, 298 U.

[2] 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376.

[3] 300 U.S. 139, 57 S.Ct. 407, 81 L.Ed. 562.

[4] (C.C.A.) 87 F.(2d) 377.

[5] John Locke correctly set the matter

out thus more than two hundred and fifty years ago:—

"Allegiance is nothing but an obedience according to law. * * * Nor can one claim it otherwise than as a public person vested with the power of the law

S. 1, 56 S.Ct. 654, 80 L.Ed. 1015; Ellis v. Interstate Commerce Commission, 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036; Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786; Iowa-Des Moines Nat. Bank v. Bennett, 284 U.S. 239, 52 S.Ct. 133, 76 L.Ed. 265; Sterling v. Constantin, 287 U.S. 378, 393, 53 S.Ct. 190, 193, 77 L.Ed. 375.

It is to say though, that those who formed and those who have maintained our institutions did not form the federal government, they have not maintained it, to be impotent. They formed, they have maintained it, upon the principle that law is liberator, that, "However it may be mistaken, the end of law is not to abolish or restrain, but to preserve and enlarge freedom." They formed and they have maintained it upon the principle, that liberty is not a mere abstraction, but a vital force, in active partnership with law, and that. it is therefore the function of law to actively and consciously advance the liberty of all of us by imposing just and due restraints upon the license of some of us.

 It is particularly to say that the regulation of interstate commerce, the prevention of fraud in its conduct, and generally its protection, fostering, and control, are, under our form of government, federal activities; c/f National Labor Relations Board v. Jones & Laughlin Steel Co., 57 S.Ct. 615, 81 L.Ed. ——;[6] that the acts of officials to prevent wrongs in or injuries to that commerce, if taken in accordance with federal law, may not be enjoined or restrained; and that whoever invokes the aid of equity to restrain the actions of duly constituted officials is under a heavy burden to show that the laws they act under are unconstitutional, or that they are acting beyond or contrary to the powers conferred upon them by those laws.

 It is to say that under federal law and statutes, telegraph companies engaged in sending messages interstate have been brought completely under federal control, and messages are sent with the consequences and subject to the conditions, and those alone, affixed by federal law to their sending.[7] One of those conditions is that telegraph companies are common carriers, subject to federal regulation and control, and that messages filed with them while protected from the prying of the merely curious, and from other unauthorized disclosures, are not protected from "the demand of other lawful authority." It is to say that against such a demand the sender of messages has no rights, either of substance or of procedure, for such a demand invades no privacy of his, takes

---

and so is to be considered as the image, phantom, or representative of the commonwealth acting under the will of the society declared in its laws, and thus he has no will, no power, but that of the law. * * *"

"The use of force without authority always puts him that uses it into a state of war as the aggressor, and renders him liable to be treated accordingly. * * * For the exceeding the bounds of authority is no more right in a great than a petty officer, no more justifiable in a king than a constable." Locke, Two Treatises on Government, pp. 271, 272, 297.

While Madison, in The Federalist, declares:

"In framing a government which is to be administered by men over men, the great difficulty lies in this; you must first enable the government to control the governed; and in the next place, oblige it to control itself."

6 In this connection we need do no more than refer, for the purpose of rejecting it, to plaintiffs' contention that the subpœnas were unauthorized because they sought indiscriminately telegrams sent interstate and intrastate.

What was being investigated was not particular telegrams, but the use of telegrams in connection with a scheme to defraud in interstate commerce. It has never been, it could not be, contended that federal agencies unearthing and bringing to book offenders against federal laws are limited in their investigations to facts and matters actually transpiring interstate, and may not use their authority to uncover and disclose matters having evidential bearing upon an interstate offense merely because they transpired exclusively within a state. The telegrams, disclosure of which is sought in this case, are within that principle.

7 Interstate Commerce Act § 1, subsec. (1) (c) and subsection (3) of section 1 (title 49 U.S.C.A., § 1 (1) (c), (3)); Oklahoma-Arkansas Tel. Co. v. Southwestern Bell Tel. Co. (C.C.A.) 45 F.(2d) 995, 76 A.L.R. 944; Western Union Tel. Co. v. Brown, 234 U.S. 542, 34 S.Ct. 955, 58 L.Ed. 1457; Western Union Tel. Co. v. Esteve Bros. & Co., 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094.

none of his rights away. It is to say that against such a demand, made not upon plaintiffs, but upon the telegraph companies, plaintiffs have no standing whatever to invoke the Fourth and Fifth Amendments, for plaintiffs are being called upon neither to produce evidence, nor to testify against themselves, they are not being called upon at all. Neither are they being subjected to a search and seizure, reasonable or unreasonable, as to their persons, or their properties. Fuller v. United States (C.C.A.) 31 F.(2d) 747; Schwartz v. United States (C.C.A.) 294 F. 528; Tritico v. United States (C.C.A.) 4 F.(2d) 664, 665; Johnson v. United States, 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919, 47 L.R.A.(N.S.) 263. It is to say that if, in demanding of the telegraph companies production and inspection of the messages in question, the commission and commission defendants are about their lawful business plaintiffs' bills must fail, not because plaintiffs have no standing to prevent the unlawful disclosure of their telegrams, but because the disclosure sought is a lawful one, of which plaintiffs may not complain.

Plaintiffs' bills, by conclusions and inferences, make defendants out mere snoopers on a prowl, prying officiously, and for no good, into their private affairs. The facts, as the record shows them, and as found by the trial judge, show defendants as not personally or officiously, but for a public purpose and officially, under authority of law, making a formal and regular demand for information needed in connection with an investigation formally and regularly set on foot by the Securities and Exchange Commission, to expose and defeat fraudulent schemes in and upon interstate commerce and prevent their consummation. The facts, in short, make out a case in which defendants, under the authority of a valid law, and for a public purpose, are lawfully demanding of the telegraph companies an inspection of telegraph messages in their files.

Matters standing thus, plaintiffs' bills are without equity. They should be dismissed. Securities and Exchange Commission v. Jones (C.C.A.) 79 F.(2d) 617; Securities and Exchange Commission v. Jones (C.C.A.) 85 F.(2d) 17; McMann v. Securities and Exchange Commission (C. C.A.) 87 F.(2d) 377; Coplin v. United States (C.C.A.) 88 F.(2d) 652; McGrain v. Daugherty, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580, 50 A.L.R. 1; Sinclair v.

United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692; Brooks v. United States, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699, 37 A. L.R. 1407.

The orders appealed from are reversed, and the causes are remanded with directions to dismiss the bills.

Reversed and remanded.