## PARRY v. BACHE et al.
### No. 10042.

Circuit Court of Appeals, Fifth Circuit.
Feb. 5, 1942.

Charles W. Zaring, of Miami, Fla., for appellant.

Melvin J. Richard, of Miami Beach, Fla., for appellees.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

494

HUTCHESON, Circuit Judge.

Defendants, citizens of the city and state of New York, and resident therein, are co-partners in a banking and brokerage business with their principal office in New York and branches and agencies in other cities and states. Plaintiff, a resident citizen of Florida and a customer of defendants, by purchases of listed stocks, arranged through their Miami, Florida office, brought this suit in the state court for an accounting with reference to stocks for which he had given purchase and sale orders to defendants.[1] Defendants removed the cause into the Federal court and alleging that the suit was upon "an issue referable to arbitration under an agreement in writing for such arbitration",[2] moved for [3] and after hearing on "affidavits filed and proof heard", were granted a stay of the trial of the action until such arbitration has been had in accordance with the terms of the agreement.[4]

Plaintiff here, insisting that the invoked statute is without application, makes seven points against the appealed order: (1)

[1] It was alleged: (1) That defendants were engaged in the business of buying and selling stocks and other securities for customers upon commission and in furnishing customers facilities for such purchase and sale; (2) that plaintiff gave, on April 16th and 20th, 1940, buying orders and made margin deposits with defendants; (3) that it was defendants' duty to actually purchase the stocks and hold them until sold or delivered on plaintiff's order; (4) that defendants accepted the orders and represented that they had purchased the stock; (5) that to protect himself from losses, plaintiff, from time to time, placed stop loss orders with defendants but on information and belief, they ignored them and sold the stocks after a heavy decline; (6) that plaintiff is without exact knowledge of the state of his account or the price at which the stocks were sold or whether defendants actually purchased the stocks. There was a prayer, for an accounting, and a judgment in accordance therewith.

[2] The agreement relied on is the regular General Customers Agreement. Signed by plaintiff, it requests the opening of an account for the purchase of stocks; agrees to be bound by the provisions of the Customers Margin Agreement attached, and also signed by plaintiff; agrees that all transactions for his account are to be subject to the rules of the exchange where transactions are executed, makes further agreements, and concludes with Section 10, the arbitration clause: "This agreement and its enforcement shall be governed by the laws of the State of New York. Any controversy between you and me arising out of, or relating to this contract, or the breach thereof, shall be determined by arbitration in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Arbitration Committee of the New York Stock Exchange, as I may elect. If I do not make such election by registered mail addressed to you at your main office within five days after receipt of notification from you requesting such election, then you may make such election. Any arbitration hereunder shall be before three arbitrators and the award of the arbitrators, or a majority of them, shall be final, and judgment upon the award rendered may be entered in any Court, State or Federal, having jurisdiction. I agree that notices of, and in, any such arbitration may be sent to me by mail, and waive personal service thereof."

[3] The motion attached a photostatic copy of the agreement for arbitration between plaintiff and defendants, alleged that plaintiff had refused, though requested by defendants to make election of an arbitration committee, to arbitrate pursuant to the Customers Agreement and defendants had elected the American Arbitration Association. Attached to the motion were the correspondence requesting and declining arbitration and affidavits, of one of the partners, of one William Graham, employee in the margin department of the New York office, and of the manager of and a customer's man in the branch office in Miami. Graham's affidavit, supported by affidavits of five of the employees, contained a full statement of the plaintiff's account and showed that the stocks had been purchased as ordered and sold because not sufficiently margined, that plaintiff's account was credited with the proceeds of the sales, and a check for the balance remaining was transmitted to him. The Miami affidavits set out that plaintiff had made his dealings through the Miami office of defendant's firm and that these orders had been transmitted by telegraph to the New York office and then transmitted to a representative of the firm on the floor of the New York stock exchange.

[4] Stay of proceedings where issue therein referable to arbitration.

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such

That the agreement is not, within the meaning of the Statute, in writing; (2) that there is not sufficient signing by the partners under New York law to make the arbitration agreement binding; (3) that there is not sufficient proof of the purchase and sale of stocks alleged to constitute interstate commerce; (4) that assuming the purchase and sale this did not constitute such commerce; (5) that the accounting plaintiff sued for is not a controversy within the arbitration clause; (6) that arbitration goes to the remedy, the remedy to be applied is determined by the law of the forum, and under Florida law the arbitration agreement is not enforceable; (7) plaintiff, under Florida law, had a defense to the agreement, while the suit was in the state court and its removal could not deprive him of this defense.

▆▆▆ We cannot agree with plaintiff. It is perfectly clear that the agreement for arbitration was in writing,[5] and that it was made and acted on by both plaintiff and defendants under circumstances which bound them both to its terms as written, including Clause 10 for arbitration. It is also too clear on the record for any ques-

tion to be made of it that the matter in suit involved orders by mail and telegraph for, and actual purchases and sales of, stock in interstate commerce.[6] Finally, it is equally clear that; the case involves a controversy covered by the arbitration agreement; that having been removed to the federal court, it proceeds as though it had been originally commenced there,[7] that the invoked statute being remedial,[8] controls the procedure in the federal court; and that the view the state court might take of the arbitration agreement is wholly immaterial.

In this view, the agreement being clearly one "evidencing a transaction involving commerce", we do not undertake to determine whether as ably argued,[9] by appellees, the invoked section of the arbitration act is broader than the preceding sections and, not limited as those are, to maritime transactions and those involved in commerce, extends to all issues "referable to arbitration under an agreement in writing for such arbitration."

The judgment granting the stay was right. It is affirmed.

arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C.A. § 3.

5 Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004; 12 Am.Jur. 609; Cousens v. Watson, 130 Me. 456, 157 A. 232; Klapp v. Bache & Co., 229 App.Div. 415, 242 N.Y.S. 155; National Cash Register Co. v. Lesko, 77 Conn. 276, 58 A. 967; Reeves Furniture Co. v. Simms, Tex.Civ.App., 59 S.W.2d 262; National Bank of Commerce of Houston v. Moody, Tex.Civ.App., 90 S. W.2d 279; McDermott v. Mahoney, 139 Iowa 292, 115 N.W. 32, 116 N.W. 788.

6 Securities Exchange Act 1934, 15 U. S.C.A. §§ 78b and 78c, 17; Securities and Exchange Commission v. Torr, D. C., 15 F.Supp. 315; Cerritos Gun Club v. Hall, 9 Cir., 96 F.2d 620; 15 C.J.S., Commerce, § 17, p. 277; Newfield v. Ryan, 5 Cir., 91 F.2d 700; Oklahoma-Texas Trust v. Securities and Exchange Commission, 10 Cir., 100 F.2d 888; Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160.

7 28 U.S.C.A. § 81; Savelle v. Southern Railway Company, 5 Cir., 93 F.2d 377, 114 A.L.R. 1261.

8 Beale, A Treatise on the Conflict of Laws, pp. 1245–46.

9 Cf. Marine Transit v. Dreyfus, 284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 516; Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 2 Cir., 70 F.2d 297, affirmed 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583; In re Utility Oil Corp., 2 Cir., 69 F.2d 524.