## KNIGHTS OF THE KU KLUX KLAN v. INTERNATIONAL MAGAZINE CO.

(Circuit Court of Appeals, Second Circuit. November 5, 1923.)

No. 170.

1. **Injunction ⬛123—Will not be granted to restrain publication of unidentified letters and papers.**

   A complainant is not entitled to an injunction to restrain publication by defendant of letters and papers on a general allegation that they are the lawful property of complainant and were wrongfully obtained by defendant, but which are not identified by the pleadings or proofs.

2. **Pleading ⬛8(11)—General allegation of ownership of papers not sufficient.**

   A broad allegation in a bill that complainant is the owner of unidentified letters and papers, without stating in what manner it became the owner, is insufficient.

3. **Literary property ⬛4—Right to injunction against publication of letter.**

   The protection against unauthorized publication to which the writer of a letter is entitled is limited to a letter which is lawful, and not an instrument or means for the accomplishment of an unlawful purpose.

4. **Literary property ⬛4—Right to restrain publication of a letter is in the author and not the recipient.**

   The right to publish a letter, or to restrain its publication is in the author of the letter, and not in the recipient.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Knights of the Ku Klux Klan against the International Magazine Company. From an order denying a motion for preliminary injunction, complainant appeals. Affirmed.

Albert Massey, of New York City, for appellant.

William A. De Ford, of New York City (John T. Sturdevant, of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. The complaint alleges: That plaintiff, a Georgia corporation, is a "ritualistic, fraternal, patriotic society of national scope, organized in 1916, and now comprises hundreds of thousands of members throughout the United States"; that defendant, a New York corporation, is the owner and publisher of "Hearst's International," a magazine of wide circulation in the United States; that defendant, without plaintiff's consent, obtained possession of certain letters and other documents, the lawful title, ownership, and possession of which "is and always has been in complainant, in the following manner." The complaint, in paragraph fifth, then details the manner referred to, which, briefly stated, is that one McPhail, while employed in plaintiff's office, wrongfully obtained possession of the letters, documents, and papers "hereinafter referred to," and one Castleton brought to New York City a large number of these, and, through the intervention of one Glavis, sold them to defendant for $3,000. The complaint then, at the conclusion of paragraph fifth, alleges:

"That thereafter, and on occasions subsequent to the *aforesaid* transaction, other original letters, documents, and papers belonging to complainant were

⬛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

wrongfully obtained by defendant and are still in defendant's possession. That the defendant International Magazine Company paid the *aforesaid* sum and obtained possession of said original letters, documents and papers belonging to the complainant *as aforesaid*, with full knowledge that the same had been taken illegally from the possession of the complainant, and said defendant came into possession of 'and still retains possession of *said* original letters, documents, and papers without the authority or consent of complainant." (Italics ours.)

In paragraph sixth, the complaint alleges:

"That for the purpose of discrediting complainant with the public, and in order to create a public sentiment against complainant, and to restrict and discourage membership in complainant, defendant has caused to be published and threatens to continue to publish a series of articles, the author of which is stated to be one Norman Hapgood, who is editor of said 'Hearst's International' and an employee of defendant. That defendant has 'published some and threatens to publish additional copies and facsimiles of the aforesaid original documents and papers in said 'Hearst's International' in connection with the publication therein of the aforesaid articles, in the following manner. * * *"

The complaint then sets forth at length the letters published in various issues of defendant's magazine together with the magazine's comments. Plaintiff produced several affidavits, directed mainly to the circumstances under which defendant obtained the letters and papers through McPhail, Castleton, and Glavis. One affidavit alleges that Glavis stated that he made several trips to various states in addition to Georgia, and had secured many "other original Ku Klux Klan letters and documents," but does not identify such letters.

Defendant submitted an answering affidavit, verified by Glavis, which dealt with the manner of acquisition of various papers, and also asserted that plaintiff and its local branches "are engaged in a conspiracy against the orderly administration of government, both federal and state, and have for their object the setting up of a government of their own concerning the lives, liberty, and property of citizens, exclusive of and superior to the existing constitutional governments of the nation and of the states." The Glavis affidavit also sets forth that it is proposed to publish certain articles in the September and October, 1923, issues of defendant's magazine, and such proposed articles, marked Exhibits I and J, are attached to and made part of the affidavit. Glavis further states that the letters and other papers thus intended to be published were obtained from sources other than plaintiff; that the articles were obtained from the Department of Justice, or from an official or ex-official of the Ku Klux Klan, "who asserted that he was the owner of and entitled to possession and all the rights to said documents, and parted with possession thereof with the understanding and intention that they should be used by deponent in said (defendant's) publication"; that "not one of the articles, letters, or documents appearing in Exhibit I of the proposed publication for September, or Exhibit J of the proposed publication for October in the Hearst International Magazine was obtained in the manner or from the person or under the circumstances set out in the moving affidavits herein and in the bill of complaint herein filed."

[1] In the first place, the complaint is so drawn that it may be argued that, in its charging allegations, it is confined to the so-called McPhail letters. But, giving to the complaint the benefit of the most favorable inference, it nowhere identifies any but these McPhail letters. Thus the question, on this branch of the case, is whether, on this record, the District Court was right in refusing to make an order authorizing the issuance of a blanket preliminary injunction against defendant publishing unnamed and unidentified papers said to be the property of plaintiff. As concisely put by the District Court:

"The unpublished letters or documents (except Exhibits I and J) are not specifically identified, and, if injunctive relief were granted, it would necessarily be inclusive of 'any letter,' 'document,' or 'other paper,' 'the lawful property of the complainant,' and 'now wrongfully, in the possession of the defendant.'"

The failure of the complaint and of the supporting affidavits to identify the papers complained of—other than those obtained via McPhail, Castleton, and Glavis, and those referred to in defendant's Exhibits I and J—justified the District Court, in its discretion, in refusing to grant the order and injunction prayed for.

[2] The broad allegation that plaintiff was the owner of unidentified letters or other papers was not enough, and, indeed, in these circumstances, might well have been a conclusion of law, rather than the assertion of a fact. It is nowhere alleged by plaintiff that the letters were written in due official course, nor how nor why plaintiff is the owner thereof.

Nevertheless, plaintiff contends that, in any event, the publication of the letters referred to in Exhibits I and J should be restrained by a court of equity. No claim is made that the letters have any literary value, nor that there has been an invasion of the right of privacy. The right to relief is asserted by plaintiff's counsel in his brief to rest upon "a property right in and to its own documents, the unauthorized use of which, to its injury, it is entitled to protect." This doctrine of right of property has for its support Woolsey v. Judd, 4 Duer (N. Y.) 379, and Baker v. Libbie, 210 Mass. 599, 97 N. E. 109, 37 L. R. A. (N. S.) 944, Ann. Cas. 1912D, 551, although earlier a different view was taken in Wetmore v. Scovell, 3 Edw. Ch. (N. Y.) 515, Hoyt v. MacKenzie, 3 Barb. Ch. (N. Y.) 320, 49 Am. Dec. 178, and Folsom v. Marsh, 2 Story, 100, Fed. Cas. No. 4,901.

[3] We accept the views expressed in Woolsey v. Judd, supra, but it must be remembered that the protection against publication thus accorded to the writer of a letter or other paper can survive only so long as the letter is lawful, and is not an instrument or means for the accomplishment of some unlawful purpose or object, and, according to the affidavit of Glavis, this may be a controverted question. Hence, because this question of fact may be an issue, plaintiff has failed to establish clearly and convincingly its right to the drastic remedy of a preliminary injunction.

As to letters in regard to which it is contended that plaintiff is the owner, because the letters are written by some officer of plaintiff, it is sufficient to state that nowhere in plaintiff's moving papers is it set

forth who are the officers, or in what manner plaintiff corporation became the owner of any of the papers quoted in this record, or whether the writers transferred to plaintiff all their rights thereto. Certain comments as to personnel were made in the publications of defendant, but such comments cannot be availed of by plaintiff on this record to prove the essential fact of ownership upon which it bases this cause of action.

[4] As to letters received by plaintiff, Baker v. Libbie, supra, contains an interesting review of many cases and discusses the respective rights of the author and the recipient of a letter. Neither this nor any other case thus far has held that the mere possession of a letter by the recipient thereof carries with it the right of the author, as in Woolsey v. Judd, supra, to restrain its publication. On the contrary, the leading cases hold, as said in Woolsey v. Judd, supra, at page 393:

"That neither the receiver thereof nor any other person has any right to publish the letters without the consent of the writer."

In another interesting case the law is stated:

"The cited cases recognize in the recipient of a private letter, sent without any reservation, express or implied, the general property, qualified only by the incidental right in the author to publish and prevent publication by the recipient, or any other person; and, as thus defined, such, and only such, is established as the property of each, and this general property implies the right in the recipient to keep the letter or to destroy it, or to dispose of it in any other way than by publication—the unqualified delivery of the letter being adjudged a gift of all the author's right to it, except his right to publish, if existing, and to prevent the publication of it without his consent. The author and the recipient cannot hold a joint property, because that would entitle each to the possession, which, as to such a thing, would be absurd; nor, consistently with the adjudged cases, could the recipient's property, like that of a bailee, be special, because that would imply an uncertain right carved out of an undefined general property of the author, contrary to the principle recognized by all consistent jurists. The author's right to publication or nonpublication being deemed his property, and only property, the protection of that property is the only adjudged ground of injunction against publication without his consent." Grigsby v. Breckinridge, 2 Bush (Ky.) 480, at page 486, 92 Am. Dec. 509.

From the foregoing, it is apparent that the District Court was right in declining to grant an injunction order prior to trial. On the argument in this court counsel for the defendant volunteered the statement that he would consent to the granting of an order, without costs, enjoining defendant from publishing the so-called McPhail letters. Whether or not plaintiff has some remedy other than that here prayed for in respect of the McPhail letters is not before us. Before an order granting an injunction may be made, it must appear that the court has the power to make such order. Upon this record, the McPhail letters are in law in no different position from those referred to in Exhibits I and J, and hence we conclude that it is not appropriate for us to modify, in this respect, an order properly made by the District Court.

The order of the District Court is affirmed, with costs.