## HEARST v. BLACK et al.
### No. 6808.

United States Court of Appeals for the District of Columbia.

Argued Oct. 12, 1936.
Decided Nov. 9, 1936.

Elisha Hanson, of Washington, D. C., for appellant.

Crampton Harris, of Birmingham, Ala., for appellees.

Before ROBB, VAN ORSDEL, GRONER, and STEPHENS, JJ.

GRONER, J.

Appellant is engaged in the business of publishing daily newspapers and magazines. In March of this year be brought in the court below his bill to enjoin the Special Senate Committee and the Federal Communications Commission from copying and using telegraphic messages in the possession of the telegraph companies sent by him to his employees in the conduct of his business. The bill alleges that in the month of September, 1935, the Senate Committee under blanket subpœnas duces tecum demanded of the telegraph companies doing business in the City of Washington the delivery to it (the committee) of all communications—i. e., telegraph messages—transmitted through the offices of such companies during the period February 1, 1935, to September 1, 1935; that when the companies expressed reluctance to make delivery of the messages, the committee went to the commission and asked its assistance to compel the production of the communications desired by the committee; that thereafter the committee and the commission conspired together to deprive appellant of his constitutional rights and liberties under the First, Fourth, and Fifth Amendments to the Constitution of the United States, in that the commission by a formal resolution detailed a member of its staff to work with an examiner of the Senate Committee in an examination of the messages and records in the offices of the telegraph companies; that pursuant to this arrangement agents of the commission "made copies of or notes concerning thousands of telegrams" from or to sundry individuals, firms, or corporations, and turned

the same over to the Senate Committee; that among the telegrams examined and copied were messages from appellant to his associates and employees and messages from his associates and employees to him which had no connection with the subject matter of the investigation—all of which were sent in the regular and orderly conduct of the business in which appellant was engaged; that the use of the messages will result in the disclosure of the contents to the committee and to the general public and will disclose to appellant's business competitors privileged and private information relating to his private business affairs and will result in irreparable injury to appellant.

The bill further alleges that the members of the Senate Committee are about to make further search in an effort to gather up additional messages which have passed between appellant and his associates and employees and that the commission is ready and willing to co-operate in the illegal seizure of such messages unless restrained by the court.

Appellees, who are the members of the Senate Committee, filed a special appearance through counsel and a motion to dismiss the bill of complaint for lack of jurisdiction. The commission neither answered the bill nor moved to dismiss, but filed what is called an "opposition" to the motion for preliminary injunction. This paper appears in the record and in it is a statement that the examination by the commission of the local telegraph offices had been completed prior to the filing of the bill and that no further investigation or examination was then planned or contemplated.

The District Court refused to grant the injunction *pendente lite* and for lack of jurisdiction dismissed the bill as to the Senate Committee, but took jurisdiction as to the commission; and the judge stated from the bench that the denial of the motion for preliminary injunction as against the commission was made solely on its disclaimer of any intention thereafter to make any further examination of the telegraphic messages of appellant or otherwise to change the then status of the case, and was without prejudice to renewal of the motion upon any evidence of further activities in the respects mentioned. Apparently it is agreed that thereafter the commission by formal resolution rescinded its original order for an investigation and

examination of the messages in the telegraph offices. And we assume—as did the lower court—that the commission's activity in the respects complained of will not be repeated. But because of the importance of the question raised as to the Senate Committee, we granted a special appeal.

Section 1 of the Communications Act of 1934 (48 Stat. 1064 [47 U.S.C.A. § 151]) states the purpose of the act to be to regulate interstate and foreign commerce in communications by wire and radio so as to make available to the people of the United States an efficient nation-wide and world-wide wire and radio communication for the national defense. The act provides for the appointment by the President of a commission and provides (section 220 (c), 47 U.S.C.A. § 220(c) that the commission shall "at all times have access to and the right of inspection and examination of all accounts, records, and memoranda, including all documents, papers, and correspondence now or hereafter existing, and kept or required to be kept by such carriers." And further, that the prohibition in section 605 (47 U.S.C.A. § 605) against disclosure of the contents of messages shall not apply to the provisions just above quoted.

This last provision we think means merely that the commission shall have complete freedom in the examination and inspection necessary in the discharge of its duty and that the prohibition (section 605) against disclosure of the contents of telegraph messages by telegraph companies shall not be so construed as to cripple or destroy the statutory right and duty of examination and inspection of records, etc., necessary in the enforcement of the act.

Section 605 (47 U.S.C.A. § 605) provides: "No person receiving or assisting in receiving, or transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney, or to a person employed or authorized to forward such communication to its destination," etc.

The Senate Committee was appointed pursuant to two resolutions of the Senate, the first July 11, 1935, and the second

July 29, 1935. The committee was authorized to investigate "all lobbying activities and all efforts to influence, encourage, promote, or retard legislation, directly or indirectly, in connection with the so-called 'holding company bill,' or any other matter or proposal affecting legislation"; to investigate also the financial structure of persons, companies, corporations, partnerships, or groups seeking to influence the passage or defeat of legislation; to investigate their political contributions and activities, and their efforts to control the sources and mediums of communication and information. The resolutions permit the committee to require by subpœna or otherwise the attendance of such witnesses and the production of such correspondence, books, papers, and documents as it deems advisable.

Appellant's bill does not challenge the power of the committee in any of the respects just mentioned, but rests on the proposition that the Communications Commission was without lawful authority to coerce the telegraph companies, over which it has supervisory control, to make the contents of appellant's telegrams available to the Senate Committee or any one else—and that the committee is now unlawfully in possession of the messages and therefore without legal right to retain, disclose, or in any manner use them. The judge of the lower court, as we assume from his statement from the bench, was of opinion that, though the court would have had jurisdiction to restrain the commission and its agents from doing an unlawful act, it ought not to grant the prayer for injunction because the things charged—whether lawful or unlawful—had been done before the filing of the bill, and because the commission had then disclaimed any purpose to give any further assistance to the committee to obtain private telegraph messages. As to the Senate Committee the court held it had no jurisdiction. In dismissing the bill as to it, the judge said: "If the Senate committee has been proceeding in a way which some people might regard as unlawful, it is better to let them continue to do it and let that be corrected in some other way than it is for me to proceed in the way that seems to me to be unlawful to attempt to correct what they do that I do not agree with."

As the allegations of the bill are not denied, we are obliged to take them as true. And in that view we are of opinion that the resolution adopted by the commission, under which its agents took possession of the telegraph companies' offices and examined wholesale the thousands of private telegraph messages received and dispatched therefrom over a period of seven months—for the purpose of securing to the Senate Committee knowledge of the contents of the messages—was without authority of law and contrary to the very terms of the act under which the Commission was constituted. And we may, we think, properly go farther and say that, even without the express prohibition contained in the act, the disclosure by the commission of the contents of private telegraph messages—solely, as the bill charges, for the purpose of furnishing to the committee information relevant or irrelevant which might or might not be used for legislative purposes—was unauthorized. And this we think, is true because the property right in private telegrams is in no material respect different from the property right in letters and other writings; nor is there any good reason why the right of privacy in the one should be any greater than in the other. Telegraph messages do not lose their privacy and become public property when the sender communicates them confidentially to the telegraph company. Indeed, in many of the States their publication without authorization—except as a necessary incident in the due administration of justice—is a penal offense; and this is so because of an almost universal recognition of the fact that the exposure of family confidences and business and official secrets would as to telegrams equally with letters, "be subversive of all the comforts of society."

That there is and always has been a property right in letters and other writings which a court of equity will protect is too well settled to discuss. It is one of those rights which antedate the Constitution. It is inherent in a free government. Pope v. Curl, 2 Atk. 342, 26 English Reports, 608. Judge Story, in Folsom v. Marsh, 9 Fed.Cas. 342, No. 4,901, speaking of the nature and extent of this property interest, said: "In short, the person, to whom letters are addressed, has but a limited right, or special property (if I may so call it), in such letters, as a trustee, or bailee, for particular purposes, either of information or of protection, or of support of his own rights and

character. The general property, and the general rights incident to property, belong to the writer, whether the letters are literary compositions, or familiar letters, or details of facts, or letters of business. The general property in the manuscripts remains in the writer and his representatives, as well as the general copyright. A fortiori, third persons, standing in no privity with either party, are not entitled to publish them, to subserve their own private purposes of interest, or curiosity, or passion."

And the Supreme Court of Massachusetts, in Baker v. Libbie, 210 Mass. 599, 97 N.E. 109, 111, 37 L.R.A.(N.S.) 944 Ann.Cas.1912D, 551, said: "The existence of a right in the author over his letters, even though private and without worth as literature, is established on principle and authority. The right is property in its essential features. It is, therefore, entitled to all the protection which the constitution and laws give to property."

See, also, Knights of Ku Klux Klan v. International Magazine Co. (C.C.A.) 294 F. 661; King v. King, 25 Wyo. 275, 168 P. 730.

In principle, therefore, we think that a dragnet seizure of private telegraph messages as is alleged in the bill, whether made by persons professing to act under color of authority from the government or by persons acting as individuals, is a trespass which a court of equity has power to enjoin. As the Supreme Court said in Federal Trade Commission v. American Tobacco Company, 264 U.S. 298, 44 S.Ct. 336, 337, 68 L.Ed. 696, 32 A.L.R. 786: "It is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up." And we cannot doubt that the purpose and intent of Congress in including in the Communications Act a positive prohibition against disclosure, was to recognize this principle and give it effect.

And so we think the law is settled that, if appellant were before the Senate Committee as a witness and were questioned as to matters unrelated to the legislative business in hand, as his bill alleges is true of the messages in question, he would be entitled to refuse to answer; and if, for his supposed contumacy, he were imprisoned, he could secure his release on habeas corpus. And

so, also, if a Senate Committee were to attempt to force a telegraph company to produce telegrams not pertinent to the matters the committee was created to investigate, the company could be restrained at the instance of the sender of the telegrams, for as the Supreme Court said in McGrain v. Daugherty, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580, 50 A.L.R. 1, decisions in Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377 and Marshall v. Gordon, 243 U.S. 521, 37 S.Ct. 448, 61 L.Ed. 881, L.R.A.1917F, 279, Ann.Cas. 1918B, 371, point, in such circumstances, to admissible measures of relief. We are, therefore, of opinion that the court below was right in assuming jurisdiction as to the commission, and if the bill had been filed while the trespass was in process it would have been the duty of the lower court by order on the commission or the telegraph companies or the agents of the committee to enjoin the acts complained of. But the main question we have to decide is in a different aspect. Here, as appears both from the bill and by admission of parties, the committee has obtained copies of the telegrams and they are now physically in its possession; and this means neither more nor less than that they are in the hands of the Senate, for the committee is a part of the Senate (McGrain v. Daugherty, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580, 50 A.L.R. 1) created, as we have seen, by the Senate for the purpose of investigating the subject of lobbying, in aid of proposed legislation. The prayer of the bill is that the committee be restrained from keeping the messages or making any use of them or disclosing their contents. In other words, that if we find that the method adopted to obtain the telegrams was an invasion of appellant's legal rights, we should say to the committee and to the Senate that the contents could not be disclosed or used in the exercise by the Senate of its legitimate functions. We know of no case in which it has been held that a court of equity has authority to do any of these things. On the contrary, the universal rule, so far as we know it, is that the legislative discretion in discharge of its constitutional functions, whether rightfully or wrongfully exercised, is not a subject for judicial interference.

The Constitution has lodged the legislative power exclusively in the Congress. If a court could say to the Congress that it could use or could not use in-

formation in its possession, the independence of the Legislature would be destroyed and the constitutional separation of the powers of government invaded. Nothing is better settled than that each of the three great departments of government shall be independent and not subject to be controlled directly or indirectly by either of the others. "This separation and the consequent exclusive character of the powers conferred upon each of the three departments is basic and vital—not merely a matter of governmental mechanism." Springer v. Philippine Islands, 277 U.S. 189, 201, 48 S.Ct. 480, 482, 72 L.Ed. 845. In McChord v. Louisville R. R. Co., 183 U.S. 483, 22 S.Ct. 165, 46 L.Ed. 289, a somewhat similar question arose. There the railroad sought to enjoin McChord and others, as Railroad Commissioners of the State of Kentucky, from acting as directed by the Legislature of that State in connection with the establishment of railroad rates. The lower court granted the injunction, but the Supreme Court reversed the decree on the ground that the making of rates was a legislative function and as such could not be controlled by a court. The opinion cites and quotes from New Orleans Waterworks Co. v. New Orleans, 164 U.S. 471, 17 S.Ct. 161, 41 L.Ed. 518, and Alpers v. San Francisco (C.C.) 32 F. 503. Both of these cases involve the attempted restraint of a city council by a court. In the latter case, which was decided by Mr. Justice Field, the complainant alleged he had a contract with the city and county of San Francisco, and that the council proposed to pass an ordinance which would impair the obligation of the contract. In other words, the enactment of an unconstitutional law. After recognizing that what complainant said was true, the court said (32 F. 503, at page 506): "The difficulty presented in the case before us is that the application to enjoin the passage of any resolution, order, or ordinance, which may tend to impair the obligation of the contract, is an application to enjoin a legislative body from the exercise of legislative power, and to enjoin the exercise of such power is not within the jurisdiction of a court of equity. This no one will question as applied to the power of the legislature of the state. * * * The fact that * * * the legislative action threatened may be in disregard of constitutional restraints, and impair the obligation of a contract, as alleged in this case, does not affect the question. It is legislative discretion which is exercised, and that discretion, whether rightfully or wrongfully exercised, is not subject to interference by the judiciary."

If courts cannot enjoin the enactment of unconstitutional laws—as to which proposition there can be no doubt—then by the same token they cannot enjoin legislative debate or discussion of constitutional measures because of the incidental disclosure or publication of knowledge unconstitutionally acquired. If it be insisted that this is the acknowledgment of a power whose plenitude may become a cataclysm, the answer is that the Congress "is as much the guardian of the liberties and welfare of the people as the courts"; and in this view the assumption may properly be indulged that, attention being called to the unlawful nature of the search, the Senate will not use its proceeds in disregard of appellant's rights.

Decree affirmed.