# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 3, 2017                    Decided May 16, 2017

No. 16-5232

SENATE PERMANENT SUBCOMMITTEE ON INVESTIGATIONS,
APPELLEE

v.

CARL FERRER,
APPELLANT

———

Consolidated with 16-5274

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:16-mc-00621)

———

*Robert Corn-Revere* argued the cause for appellant. With him on the briefs were *Ronald G. London*, *Robert D. Luskin*, *Stephen B. Kinnaird*, *Jamie S. Gardner*, *Steven R. Ross*, and *Stanley M. Brand*.

*Jessica Ring Amunson* and *Joshua M. Parker* were on the brief for *amici curiae* DKT Liberty Project, et al. in support of appellant.

*Karen A. Chesley* and *David Boies* were on the brief for *amici curiae* Legal Momentum, et al. in support of appellee.

*Emma J. Llansó* was on the brief for *amici curiae* Center for Democracy & Technology and Electronic Frontier Foundation in support of appellant.

*Thomas E. Caballero*, Assistant Counsel, Office of Senate Legal Counsel, argued the cause for appellee. With him on the brief were *Patricia Mack Bryan*, Senate Legal Counsel, *Morgan J. Frankel*, Deputy Senate Legal Counsel, and *Grant R. Vinik*, Assistant Senate Legal Counsel.

Before: TATEL, SRINIVASAN and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Carl Ferrer, Chief Executive Officer of the online advertising website Backpage.com, appeals two district court orders directing him to produce various documents in response to a subpoena issued by the Senate Permanent Subcommittee on Investigations. During the pendency of this appeal, however, Ferrer turned over some of the documents, and the Subcommittee completed its investigation and issued its final report. Given this, and given that the Subcommittee no longer seeks to enforce the subpoena, it argues that the case has become moot. Ferrer responds that the case remains live because, according to him, this court can order the Subcommittee to return, destroy, or refrain from publishing the produced documents. We disagree. Because the relief Ferrer seeks is barred by the separation of powers, including the Speech or Debate Clause, the case is now moot.

# I.

In the first half of 2015, the Senate Permanent Subcommittee on Investigations began examining "businesses that directly or indirectly facilitate criminal sex trafficking conduct, including trafficking in minors." S. REP. NO. 114–214, at 6 (2016). The Subcommittee suspected that online advertisers were playing a central role in sex trafficking by "providing . . . easily accessible forum[s] that match[] buyers of sex with anonymous traffickers selling minors and adults." *Id.* at 3. In particular, the Subcommittee focused on Backpage.com, a large, classified-advertising website that allows third-party users to post their own ads. At that time, Backpage featured, alongside run-of-the-mill categories like real estate, jobs, and automobiles, a section dedicated to "adult" services, which contained subcategories ranging from "escorts" and "body rubs" to "adult jobs." Subpoena Duces Tecum of Oct. 1, 2015. Ads in those sections "typically consist[ed] of a headline, a photo or photos, video, and a brief description of the services being offered." S. REP. NO. 114–214, at 4.

In April 2015, the Subcommittee asked Backpage for an explanation of its "moderation" procedures, *i.e.*, standards and policies Backpage says it uses to "screen, block and remove [user-supplied] ads . . . to guard against any form of human trafficking or child exploitation." Letter from Steven R. Ross, Counsel to Backpage.com to Sens. Portman and McCaskill (Oct. 23, 2015); *see* S. REP. NO. 114–214, at 7. Backpage sent its General Counsel to be interviewed by the Subcommittee, but when the Subcommittee found her answers lacking in several respects, it sent follow-up questions and requests for information, all of which went unanswered.

On July 7, 2015, the Subcommittee issued its first subpoena duces tecum asking Backpage to produce a variety of documents. Responding through counsel, the company argued that the subpoena was overbroad and a per se violation of the First Amendment. Although the Subcommittee offered to narrow the subpoena, Backpage continued insisting that the subpoena violated the First Amendment.

Seeking to end the stalemate, the Subcommittee withdrew the initial subpoena on October 1 and then issued a new one to Backpage's CEO, Appellant Carl Ferrer. The new subpoena sought eight categories of documents, giving Ferrer until October 23 to respond or "assert any claim of privilege or other right to withhold" documents in a privilege log. *See* Subpoena Duces Tecum of Oct. 1, 2015.

Although Ferrer supplied a handful of documents, he refused to search for any other responsive material. He gave three reasons for doing so: the subpoena exceeded the Subcommittee's investigative authority, infringed the First Amendment rights of Backpage and its users, and sought "[im]pertinent" information. Letter from Steven R. Ross to Sens. Portman and McCaskill (Oct. 23, 2015).

The Subcommittee rejected Ferrer's objections, but extended his deadline to comply until November 12. Ferrer produced several more documents, repeated his three objections, and added that he was withholding "[c]ertain documents . . . on the basis of attorney-client and/or attorney work product privilege." Letter from Steven R. Ross to Sens. Portman and McCaskill (Nov. 13, 2015).

Confronted with Ferrer's resistance, the Subcommittee sought authority from the Senate to bring a civil subpoena-enforcement action under 28 U.S.C. § 1365(a), which gives the

United States District Court for the District of Columbia original jurisdiction "over any civil action brought by the Senate or any authorized . . . subcommittee . . . to enforce . . . any subp[o]ena or order issued by the Senate or . . . subcommittee of the Senate to . . . any natural person." With the Senate's unanimous approval, the Subcommittee filed an enforcement application in district court. Ferrer responded with the same three objections raised in his October 23 letter—that the subpoena violated the First Amendment, pursued impertinent materials, and exceeded the scope of the Subcommittee's investigative power.

The District Court granted the Subcommittee's application on August 5, 2016, ordering Ferrer to comply with the subpoena within ten days. Ferrer immediately noticed an appeal and sought a stay in the district court, our court, and the Supreme Court, all of which denied his request.

On September 13, the day the Supreme Court denied a stay, Ferrer produced some 110,000 pages of documents, moved the district court for an extension to complete production, and, for the first time in that court, invoked attorney-client and work-product privileges as to a subset of the yet-to-be produced documents. Although the district court granted a short extension, it rejected as untimely Ferrer's assertion of privilege. Ferrer again appealed, and this court denied a stay pending appeal except with respect to the documents Ferrer claims are privileged.

Ferrer turned over all concededly non-privileged documents in late November. Some two months later, on January 10, 2017, the Subcommittee held its last hearing, issued a final report on sex trafficking (including a lengthy appendix featuring certain documents Backpage produced), and closed the investigation. Two weeks later, the

Subcommittee moved to dismiss this appeal, arguing that these subsequent events had mooted the case and deprived this court of jurisdiction.

## II.

Article III of the U.S. Constitution requires a controversy to remain live "at all stages of review." *Decker v. Northwest Environmental Defense Center*, 133 S. Ct. 1326, 1335 (2013). "For that reason, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed" as moot. *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).

The Subcommittee argues that the case has become moot because the Subcommittee has "held its hearing, issued its final report, . . . completed its investigation," and "no longer seek[s] to enforce any part of the subpoena." Subcommittee Mot. to Dismiss at 3, 12. Ferrer concedes that no controversy remains as to the privileged documents he withheld, which the Subcommittee has never received and no longer wants. Subcommittee Mot. at 12; Oral Arg. Rec. 2:45–3:05. Nonetheless, he insists, the dispute remains live because the court may still provide at least some "effectual relief" by ordering the Subcommittee to return, destroy, or refrain from further publishing and distributing the documents Ferrer produced. He also argues that even if the case has become moot, the dispute satisfies the "capable of repetition yet evading review" exception to mootness.

## A.

In support of his argument that this case remains live because our court can order the Subcommittee to return or

destroy the documents, Ferrer relies principally on the Supreme Court's decision in *Church of Scientology*, 506 U.S. at 12. In that case, the Internal Revenue Service issued an administrative summons to a state-court clerk directing him to produce tape recordings of conversations between officials of the Church of Scientology and their attorneys. *Id.* at 10. When the IRS filed a petition to enforce the summons in district court, the Church intervened to oppose production on the grounds that the tapes were privileged. *Id.* at 11. The district court ordered production of the tapes and the Church appealed, but before the appeal could be decided, the state-court clerk delivered the tapes to the IRS, at which point the appellate court dismissed the case as moot. *Id.* at 12. The Supreme Court reversed, explaining that the controversy remained live because "a court . . . h[as] [the] power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession." *Id.* at 13.

According to Ferrer, the same "destroy or return" remedy is available here. We might agree were his documents held in the grips of a federal agency. But as the Subcommittee points out, because it is Congress that holds Ferrer's documents, he must contend with the cloak of protection afforded by the Constitution's separation of powers, including the Speech or Debate Clause, which provides that, "for any Speech or Debate in either House, [Members of Congress] shall not be questioned in any other Place." U.S. CONST. art. I, § 6, cl. 1.

Although the Speech or Debate Clause chiefly functions to immunize Members of Congress from civil or criminal liability arising from "actions [falling] within the 'legislative sphere,'" *Doe v. McMillan*, 412 U.S. 306, 312 (1973), its protections extend far more broadly. In *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995), our court held that the Clause affords Congress a "privilege to use materials

in its possession without judicial interference," even where unlawful acts facilitated their acquisition. *Id.* at 416. There, a paralegal working for a law firm representing Brown & Williamson stole internal tobacco-related documents and arranged for their delivery to the House Subcommittee on Health and the Environment. *Id.* at 411–12, 422. Suing the paralegal for breach of contract in state court, the law firm issued subpoenas to two Congressmen seeking production of all documents in the Subcommittee's possession. *Id.* at 412. The Members removed the case to federal district court and filed a motion to quash, arguing that the Speech or Debate Clause barred the subpoena's enforcement. *Id.* The district court granted the motion, and our court affirmed, holding that even though the documents had been stolen, "[a] party is no more entitled to compel congressional testimony—or production of documents—than it is to sue congressmen." *Id.* at 421. "[E]ven though material comes to a legislative committee by means that are unlawful or otherwise subject to judicial inquiry," we explained, "the subsequent use of the documents by the committee staff in the course of official business is privileged legislative activity." *Id.* at 417 (quoting *McSurley v. McClellan*, 553 F.2d 1277, 1296–97 (D.C. Cir. 1976) (en banc) (per curiam)).

In reaching its decision, *Brown & Williamson* relied in part on *Hearst v. Black*, 87 F.2d 68 (D.C. Cir. 1936), in which our court held that the separation of powers barred it from enjoining a Senate committee from "keeping[,] . . . making any use of[,] . . . *or disclosing*" the contents of telegraphs a Senate committee had unlawfully obtained from the Washington offices of publisher William Randolph Hearst. *Id.* at 71 (emphasis added). We explained then—and it is just as true now—that "[w]e know of no case in which it has been held that a court of equity has authority to do any of these things." *Id.* To circumscribe the committee's use of material in its physical

possession would, we emphasized, "destroy[]" the independence of the Legislature and "invade[]" the constitutional separation of powers. *Id.* at 72; *accord McMillan*, 412 U.S. 306, 338 n.11 (Blackmun, J., concurring in part and dissenting in part) ("We have no more authority to prevent Congress, or a committee . . . [,] from publishing a document than to prevent them from publishing the Congressional Record.") (quoting *Methodist Federation for Social Action v. Eastland*, 141 F. Supp. 729, 731 (D.D.C. 1956) (three-judge court)); *Sanders v. McClellan*, 463 F.2d 894, 902 (D.C. Cir. 1972) ("The judiciary has the duty of not lightly interfering with Congress' exercise of its legitimate powers.") (internal quotation marks omitted).

*Brown & Williamson* and *Hearst* thus make clear that the separation of powers, including the Speech or Debate Clause, bars this court from ordering a congressional committee to return, destroy, or refrain from publishing the subpoenaed documents. Because we can provide Ferrer with no "effectual relief whatever," *Church of Scientology*, 506 U.S. at 12, the case has become moot.

Resisting this conclusion, Ferrer first argues that because the Subcommittee "enlist[ed] the jurisdiction of the judiciary" under 28 U.S.C. § 1365, "it subject[ed] itself to that jurisdiction," meaning it "cannot . . . assert [that] separation of powers precludes an adverse judicial resolution." Appellant's Opp. to Appellee's Mot. to Dismiss ("Opp. Br.") at 10. We disagree. Nothing in Section 1365—which gives the district court "original jurisdiction . . . over any civil action brought by the Senate or any authorized . . . subcommittee . . . to enforce . . . any subp[o]ena"—provides that the Senate forfeits its constitutional protections by seeking judicial enforcement of a subpoena. Confirming this, the Senate Report accompanying the statute's enactment states that "[w]hen

Congress petitions the court in a subpoena enforcement action, Congress does not waive its immunity from court interference with its exercise of its constitutional powers." S. REP. NO. 95–170, at 94 (1977) (report accompanying Pub. L. No. 95–521, 92 Stat. 1824); *see Mohamad v. Palestinian Authority*, 556 U.S. 449, 459 (2012) ("[A]lthough we need not rely on legislative history given the text's clarity, we note that the history only supports our interpretation . . . .").

Insofar as Ferrer contends that, apart from Section 1365's text, the Subcommittee necessarily accepted an implicit restriction on the Speech or Debate Clause by seeking to enlist the judiciary's assistance in enforcing its subpoena, his argument lacks merit. In ordering compliance with the Subcommittee's subpoena, the district court merely aided the Senate in effectuating its inherent subpoena power. The Subcommittee did not thereby necessarily invite the courts' interference with constitutionally protected legislative activity. *Cf. United States v. Helstoski*, 442 U.S. 477, 490–91 (1979) (waiver of congressman's Speech or Debate Clause immunity, assuming such waiver is possible, would require "[a]n explicit and unequivocal renunciation").

Citing two Supreme Court Speech or Debate Clause cases—*Hutchinson v. Proxmire*, 443 U.S. 111 (1979), and *McMillan*, 412 U.S. 306—Ferrer next argues that we may prospectively enjoin the Subcommittee from further disseminating Backpage's documents "beyond the legitimate legislative needs of Congress." Opp. Br. 11. But *Hutchinson* held only that the Speech or Debate Clause could not shield a Senator from retrospective liability for defamatory statements made in non-legislative publications. *Hutchinson*, 443 U.S. at 132–33. And *McMillan* concluded that the Clause barred an award of damages and injunctive relief arising from a congressional committee's decision to publish materials whose

distribution was "otherwise actionable under local law," at least "insofar as [the complaint] sought relief from . . . Committee members" and their legislative aides. *McMillan*, 412 U.S. at 312, 317. Neither case held that courts may prospectively limit a congressional subcommittee's lawful use of documents in the course of a legitimate legislative activity.

To be clear, we take no position on whether courts are powerless to enjoin individual members—or the committees of which they are a part—from disseminating investigative materials whose contents have no relationship to legislative functions or whose distribution would arguably violate the law. *See Watkins v. United States*, 354 U.S. 178, 187 (1957) (investigative activities "must be related to, and in furtherance of, a legitimate task of the Congress"). That issue is not before us. The Subcommittee obtained the documents in service of legitimate legislative purposes and Ferrer makes no claim that publishing them is "otherwise actionable" under any law.

## B.

This brings us to Ferrer's alternative claim—that even if the case has become moot, we may nonetheless entertain the appeal under the exception to mootness for issues that are "capable of repetition, yet evading review." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998). This exception applies where "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Id.* (alterations in original). We have no need to address the first requirement, for Ferrer clearly fails the second.

A controversy "is capable of repetition" only if "the same parties will engage in litigation over the same issues in the future." *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627,

633 (D.C. Cir. 2002). "A 'theoretical possibility,' . . . is not sufficient to qualify as 'capable of repetition'[;] . . . . [t]here must instead be a 'reasonable expectation' or 'demonstrated probability' that the action will recur." *Beethoven.com LLC v. Librarian of Congress*, 394 F.3d 939, 951 (D.C. Cir. 2005) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam)).

According to Ferrer, "The threat that Backpage.com could be compelled to produce documents intruding on its editorial judgment in violation of the First Amendment is easily capable of repetition." Opp. Br. 15. For that to happen, however, Ferrer would have to again have an enforcement action brought against him for failing to comply with a similar subpoena, seeking similar documents, and raising similar issues. Although there is a "theoretical possibility" that this chain of events might occur, Ferrer gives us no basis for believing that there is a "reasonable expectation" or "demonstrated probability" that it will. *Murphy*, 455 U.S. at 482; *see Pharmachemie*, 276 F.3d at 633–34 (where "several contingencies would have to occur for the same issues to arise again," party failed to "demonstrate[] a reasonable likelihood" of repetition).

Ferrer emphasizes that two members of the Subcommittee have shown a continued interest in combating sex trafficking on Backpage.com and on other forums. *See* Jan. 10, 2017 Hearing Before Senate Permanent Subcommittee on Investigations, *available at* https://goo.gl/ot8PiM. Ranking Minority Member McCaskill stated that she would "do everything in [her] power to protect young women from being exploited . . . on Backpage.com or anywhere else." *Id.* 35:35–36:05. And Chairman Portman reiterated that he was "committed to continuing this effort, not just this one specific goal of uncovering information that was not previously known

about Backpage . . . but a broader effort . . . looking at the laws differently." *Id.* 2:23:45–2:24:15. Such statements, however, hardly establish a "reasonable expectation" that the Subcommittee, having completed its work and issued its final report, will nonetheless reopen its investigation and again issue a subpoena to Ferrer.

## III.

Although Ferrer's challenge to this subpoena-enforcement order is moot, we emphasize that our decision does not leave future subpoena recipients without a remedy. As counsel for the Subcommittee pointed out at oral argument, "if you wish to appeal an order . . . enforcing a Senate subpoena you stand on your privilege, you go into contempt." Oral Arg. Rec. 17:30–45. For example, in *In re Application of U.S. Senate Permanent Subcommittee on Investigations* (*Cammisano*), 655 F.2d 1232 (D.C. Cir. 1981), a district court enforced a Senate subcommittee's subpoena and, when the subpoena's recipient refused to comply, entered a separate order of civil contempt. *Id.* at 1234–35. As a result, both the district court and this court addressed his objections on the merits. Although the subpoena recipient lost, through his disobedience he preserved his right to appellate review of his objections. By contrast, Ferrer, by responding to the subpoena, has triggered Congress's constitutional protections and thus deprived the courts of authority "to grant any effectual relief whatever." *Church of Scientology*, 506 U.S. at 12.

Finally, Ferrer asks that we vacate the district court's judgments if we dismiss the case as moot. "Courts usually" exercise their equitable discretion to "vacate a judgment 'when mootness results from unilateral action of the party who prevailed below' or from circumstances beyond the control of the parties." *Sands v. NLRB*, 825 F.3d 778, 785 (D.C. Cir. 2016) (quoting *U.S. Bancorp Mortgage Co. v. Bonner Mall*

14

*Partnership*, 513 U.S. 18, 25 (1994)). That is exactly what happened here. With respect to the documents Ferrer produced over his First Amendment objection, any dispute was mooted by operation of the Speech or Debate Clause. And with respect to the documents Ferrer withheld pursuant to common law privileges, the Subcommittee mooted the case by issuing its final report and disclaiming any interest in further enforcing the subpoena. Given this, and given that the Subcommittee itself does not oppose vacatur, we vacate the district court's judgments and dismiss the case as moot. *See Sands*, 825 F.3d at 786 (finding "opposing side's silence" in the face of a party's request for vacatur to "significant[ly]" weigh in favor of granting the request).

*So ordered.*